IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**VAUGHN KELLY, SR.**                                              **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO.: 3:24-CV-11-MPM-JMV**

**KROGER LIMITED PARTNERSHIP I,**
**CAC OPERATIONS LLC.,**
**AND NOLAN BOOTH**                                      **DEFENDANTS**

**ORDER DENYING MOTION FOR SANCTIONS**

This matter is before the court on the motion of Plaintiff, Vaughn Kelly, (hereinafter "Kelly"), for sanctions for spoliation of evidence against defendants and for other relief [73]. The motion and accompanying memo were filed on October 5, 2024. On October 14, 2024, defendants Nolan Booth and CAC Operations LLC responded in opposition. On October 15, 2024, the Plaintiff filed a reply to that response. Then, on October 17,2024, the remaining defendant, Kroger Limited Partnership I (hereinafter "Kroger"), timely filed its response to the motion. Plaintiff filed no reply to that response and the time for doing so has now expired. Accordingly, the matter is ripe for decision. For the reasons that follow, the motion is denied.

**Background**

It appears that on April 20, 2023, Plaintiff was the owner and operator of a commercial semi-truck (an "18-wheeler") traveling through Horn Lake, MS enroute to make deliveries elsewhere in the state when he chose to stop at a local Kroger Grocery store to purchase some ice. (Dep. of Kelly pp.14,17). Plaintiff testified he as was familiar with the Kroger store and aware that commercial vehicles were not permitted to park in the patron parking lot located in front of the store. *Id*. at 14-15. He was aware however that commercial trucks made deliveries to Kroger at its rear entrance. Though he had no delivery to make to Kroger at that time, he believed it was outside

1

regular delivery hours, and so he drove his truck to the rear entrance in order to park and go in and purchase the ice. But before he could get out of the truck, he unexpectedly soiled himself. He cleaned himself up and disposed of his soiled clothes outside the truck. *Id*. 16-18.

It is unclear how much time all of this took, but apparently, after he exited the truck with the soiled clothing in an effort to dispose of them, a towing company vehicle appeared and allegedly attempted to begin towing Kelly's truck. Ultimately, an argument ensued as to whether Kelly's truck was illegally parked, after which the tow truck driver (alleged to be defendant Nolan Booth)[1] was allegedly assaulted by Kelly. Ultimately, Kelly's semi-truck was towed despite his protest.

At this juncture, some of the details surrounding this event are not clear, but it appears there was no Kroger management present at the store on the date of this occurrence; that Kelly called the Horn Lake Police Department while the event was occurring and an officer reported to the scene; that at least one photo of the tow truck and the parked semi-truck were taken by someone prior to the semi-truck actually being towed; and that on the following day Booth filed an affidavit with the Horn Lake Police Department that read as follows:

> Vaughn Kelly did purposely, knowingly and unlawfully cause bodily injury to Nolan Booth by striking him with a closed fist to the side of his head and grazing the back of his right shoulder with a sledgehammer. Nolan added Kelly became irate and took his car keys, due to him attempting to tow Kelly's semi truck (2012 Red Volvo bearing LA tag P243638) that was parked at the rear west side of the business at 7251 Interstate Boulevard (Kroger East). Nolan added he works for A-1 Towing Company who has corporate contract with Kroger East, and he was authorized to come tow the truck per their agreement. Which occurred in the City of Horn Lake, County of Desoto, State of Mississippi in violation of 97-3-7(1)(A) of the Mississippi Code of 1972 Annotated and Amended.
>
> TO WIT: SIMPLE ASSAULT

On or about the same day, the police officer who had been present at the scene of the towing made the following police report:

---

[1] Apparently, Booth had no CDL and has contended in discovery answers that the tow truck was in fact driven by another man, a Justin Miller.

Officers Involved: S.Bailey

Report Details:

1: On April 20th, 2023 at approximately 7:04 PM, I Officer Bailey was dispatched to 7251 Interstate Boulevard (Kroger East) with regard to a disturbance with weapons involving two males. While en route, caller advised the other male was trying to take his vehicle and threatened to shoot him.

2: Upon my arrival, both males were standing near their vehicles at the rear west side of the business. I made contact with Vaughn Kelly identified by his Louisiana driver's license who was the driver of a red in color 2012 Volvo Semi bearing LA tag P243638. Kelly advised he was the owner operator of the semi and the company is KY Transport, LLC MC#4754 US-DOT #2961218. While speaking with Kelly, he was very irate and uncooperative. Kelly added he was furious because his truck was getting towed by the other male in question, and he was unsure of the reasoning. Kelly added he was trying to throw trash away, and when he walked back to his truck he observed it being towed. Kelly advised his truck had only been parked at the back of the business for approximately 10 minutes. Kelly stated he then attempted to talk to the driver of the towing company, but he refused to listen. Kelly advised he then stood in between the vehicles and the driver yelled "Move your ass out the way, or I'll run you over". Kelly added he did take the other driver's keys because he really needed his truck. Kelly stated that's when he grabbed a sledgehammer and hit the locks on the wheel lock and also the trailer air line breaking them off. Kelly admitted he was doing everything he could to save his truck from being towed. Kelly added his truck was damaged due to the tow truck attempting to tow it. I observed Kelly's truck to have front end damage and the radiator was leaking. I asked Kelly if needed EMS and he declined.

3: I also made contact with Nolan Booth identified by his MS driver's license who was the driver of a black in color 2018 Kenworth bearing TN tag 16349CP. Booth works for A-1 Towing Company, and he stated he was told to come tow the vehicle per his company's contract with Kroger. Booth was very irritated and stated Kelly had assaulted him by punching him with a closed fist. Booth advised Kelly grazed the back of his right shoulder with the sledgehammer while attempting to hit the locks. Booth stated Kelly also took all his keys including his wrecker key from him. I asked Kelly did he have Booth's keys, and he replied yes. I was able to get Booth's keys located in Kelly's side pockets. Booth added he was advised that Kelly's truck had been parked at the back of the business for approximately an hour. Booth added Kroger Corporate contacted him to tow the truck and when he arrived Kelly

Report Run On Friday, April 28, 2023 By D. Steiner     Page: 3 of 6

was not in the truck nor did he see anyone around it. Booth stated he tried to explain to Kelly the reasoning for the tow, but he refused to listen. I asked Booth if needed EMS and he declined. Booth added he would come pursue charges, once he calmed down and spoke with his management. After gathering all provided details, both parties were separated and given incident numbers for their records. The semi would also be towed to A-1 Towing Company.

4: Later on, Booth arrived at the station and advised he needed to sign charges. I completed Simple Assault Warrant 202300154 that Booth swore to and signed which is pending Judge Murphy's signature. I cleared for service.

End of Report. S.Bailey/ 28059

It also appears that, at some point after the day of the event, Kelly made contact with the Kroger store manager who, as noted, was not on duty on the day of the event and obtained from him an undated statement on the letterhead of Kroger. It read:

3

> To whom it may concern,
>
> My name is Lorenzo Franklin store manager for Kroger located at 7251 Interstate Blvd. in Horn Lake, MS 38637. This letter is to confirm that on Thursday April 20, Mr. Vaughn Kelly was a patron at the store. Mr. Kelly was not in any violations of parking an unauthorized vehicle due to the fact that he was a customer at our location. As store leader I did not authorize vehicle to be towed. Any further questions or inquiries please contact me at 662-349-8334.

Kelly's assault charge was heard by the Municipal Court of City of Horn Lake on October 10, 2023. Kroger's manager, Franklin, appeared by subpoena, and a copy of the aforementioned letter was presented to the prosecutor who also spoke to Franklin. According to Franklin, he did not actually testify and was only asked by the prosecutor whether he had been present at the time of the event on April 20, 2023. After stating he was not present that day, he was instructed by the prosecutor that he could leave the proceedings. Apparently, the alleged victim, Booth, himself declined to appear for the proceeding and the prosecutor dismissed the assault charge. The order of dismissal made by the Municipal Court judge read, in part: "victim did not appear at trial. Discussed facts with victim and he agreed to dismiss over the phone. *Witness contradicted victim's story.*" *(emphasis added)*.

On January 10, 2024,[2] Kelly filed the instant complaint alleging, in part:

> On March 15, 2023, A1's authority to operate as a as a motor property common carrier was revoked by Federal Motor Carrier Safety Administration and was not reinstated until May 5, 2023. A1's activities on April 20, 2023, was therefore illegal and done without authority. … Kroger's failure to suspend or prevent operations of A1 and Booth prior to April 20, 2023, was the proximate cause of injuries, loss of property and income suffered by Kelly from April 20, 2023….. Kelly contends he was not illegally parked … Without any provocation or enticement, A1, Booth and Kroger launched an attack physically assaulted Kelly, a patron of Kroger, illegally possessed his truck, swore to a false affidavit, subjected him to ordeal of criminal charge and caused mental and emotional distress.

---

[2] The complaint was amended on February 16, 2024.

Am. Compl. [16].

After suit was filed, the depositions of the store manager, Franklin, and Plaintiff Kelly, were taken. Kelly testified that on the day after truck was towed, he returned to Kroger and spoke to the manager who informed him that he had reviewed the tape of the event that day and wrote the "To whom it may concern" statement on Kroger's letterhead. (Kelly Dep. pp. 33).

On the other hand, it also appears that nearly a year later in September 2024, after suit was filed in January 2024, Franklin was deposed, and he changed his opinion to assert that Kelly had been illegally parked when towed. Moreover, he testified that his opinion had changed *after he viewed*, for the first time, the aforementioned video. One problem with this account though, is that at least according to the October 2023 municipal court records, Franklin had not changed his opinion as of that time. The obvious implication being that if Franklin's deposition testimony is accurate, it must not have been until long after the subject tow occurred that Franklin first actually viewed the Kroger video. This, of course, would be inconsistent with the assertion that the subject video had been automatically taped over 30 days after the tow event. *See* Kroger's Memo [89] at 4.

Franklin's deposition testimony is not the only thing that changed after suit was filed. On October 17, 2024, Kroger submitted, in support of its opposition to the instant motion, an affidavit signed by Franklin asserting, contrary to his earlier "to whom it may concern" statement written on Kroger's letterhead, in part as follows:

"The area behind the subject store is for authorized delivery trucks and other vendors only. It is not part of the parking lot and there is no customer parking behind the store. Any vehicle parked in this area is subject to being towed. On April 20, 2023, the date in question, Plaintiff's

5

truck was an unauthorized vehicle that was illegally parked behind the subject store." Ex. A to [88] at p. 6.

Also attached to the affidavit are three photos asserted to depict the restricted parking or no parking signage at the Kroger store. The first is a photo of some red striping on asphalt along a concrete curb ([88] at 9), and the second is a "no parking unauthorized violators will be towed away at owner's expense" sign appearing to be posted in the grass along a concrete sidewalk ([88] at 11). The other sign is one that is posted in what Franklin's affidavit describes as the patron parking lot in the front of the Kroger store and advises, in part, "No commercial parking . . . unauthorized vehicles will be towed." [88] at 13.

The obvious discrepancy in the store manager's account of whether Plaintiff was illegally or impermissibly parked on the date of the tow event is not the only concerning anomaly that has arisen in this case, all of which will no doubt be the subject of a rigorous examination under oath at the trial, if any, of this matter. Nevertheless, I find, as explained below, that Plaintiff has not sufficiently demonstrated, at this juncture, that any defendant intentionally destroyed or permitted the destruction of the Kroger video.

**The Law**

Spoliation of evidence is "the destruction or significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). Fed. R. Civ. P. 37(e) in particular provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

6

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Stated differently, but to the same effect, "to obtain an adverse inference instruction at trial, Plaintiff must establish three elements: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020). Actual intent is required. *Itron, Inc. v. Johnston*, 2017 WL 11372353, at *2 (S.D. Miss. Oct. 26, 2017).

**<u>Analysis</u>**

The law as applied to the alleged facts here falls short of warranting a finding that the subject video was destroyed with a culpable state of mind so as justify imposition of an adverse inference. In this regard, I note first that Plaintiff himself apparently did not promptly suggest any video be preserved. And, neither Plaintiff's argument nor evidence demonstrate that the absence of the video is necessarily prejudicial to Plaintiff since there is at least one photograph of the subject vehicles as parked from which, given the landmarks apparent in it, a person could easily reconstruct the exact location of the vehicles at the time of the tow. That photo also does *not* appear to show the vehicles parked in the red restricted parking area described in Franklin's recent affidavit, nor for that matter do the photos of the three parking signs produced by Kroger actually

7

demonstrate that the subject truck was parked in a marked no parking area. In fact, on this record, it is unclear to the undersigned just what notice Kroger actually relies for the assertion that Kroger has a strictly no parking in the rear lot prohibition or that Kelly was otherwise notified that parking was not permitted at the rear entrance.

In any event, I find the existing record evidence insufficient to support granting the instant motion for a spoliation finding. Accordingly, the motion is denied.

SO ORDERED, this the 29th day of October, 2024.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE