IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**VAUGHN KELLY, SR.**                                              **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO. 3:24-cv-11-MPM-JMV**

**KROGER LIMITED PARTNERSHIP I,**
**CAC OPERATIONS LLC,**
**AND NOLAN BOOTH**                                               **DEFENDANTS**

**ORDER**

This cause comes before the court on the motion of defendants Kroger Limited Partnership I, CAC Operations, LLC ("CAC") and Nolan Booth for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Vaughn Kelly, Sr. has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is, *inter alia*, a negligence and malicious prosecution action arising out of an April 20, 2023 incident in which plaintiff, a commercial truck driver, engaged in an altercation with Booth, a tow truck driver employed by CAC, operating under the business name A1 Xclusive Auto ("A1"). The dispute occurred while Booth was attempting to tow plaintiff's 18-wheeler semi-trailer truck from the parking lot of the Horn Lake Kroger, after a store employee had concluded that the truck was illegally parked and should be towed. Kelly denies that his truck was illegally parked, and the parties further disagree regarding whether plaintiff was an invitee or trespasser at the time the tow truck was called. It is undisputed that plaintiff sought to use Kroger's bathroom after suffering a bowel emergency, but he insists that his intent all along was to make a purchase at the store after attending to his bathroom needs. Kroger emphasizes that

1

plaintiff never actually made such a purchase and should thus be considered a trespasser, but he responds that it was defendant's unlawful decision to have his vehicle towed which prevented him from completing his planned purchase.

Likewise in heavy factual dispute is exactly how the altercation between plaintiff and Booth took place. Booth asserts that, after plaintiff observed him making preparations to tow his truck, he "went crazy," including by swinging a hammer at him. [Booth Depo at 30]. For his part, plaintiff insists that it was Booth who behaved in an irrational manner, including by driving his tow truck so close to him that it physically touched his chest. [Affidavit at 1-2]. The Horn Lake Police were called to the scene, and they allowed A1 to tow plaintiff's truck to its office. *Exhibit J [Incident Report]*. Moreover, Booth was advised of his right to file assault charges against Kelly, and he did, in fact, do so. *Id.* Booth appeared at the Horn Lake Municipal Court at least two times in an effort to pursue the assault charges against Kelly, but the charges were dropped by the city prosecutor after Booth failed to appear for a final court appearance. *See Exhibit H, Pg. 48, lns. 17-18 [Booth Depo]*. In explaining his failure to appear at the hearing, Booth maintains that he was unable to make it to court within the time provided, but he testified in his deposition that, in his view, the case should never have been dropped. *Exhibit H, Pg. 53, lns 5-11 [Booth Depo]*.

It should be clear from the above discussion that virtually all of the crucial facts of this case are heavily disputed among the parties, and this ultimately dictates the result of the instant summary judgment motions. In so stating, this court emphasizes that it is, at the summary judgment stage of proceedings, required to view the facts in the light most favorable to plaintiff, as the non-moving party. This favorable standard of review aside, this court notes that, in opposing summary judgment, plaintiff is able to call upon a very powerful piece of evidence,

namely a letter written by Kroger manager Lorenzo Franklin which broadly contradicts his employer's arguments in the case. As noted by plaintiff in his brief:

> Kroger admitted it wrote a letter ("Exhibit 3") to assist in the return of Vaughn Kelly's truck. The letter correctly stated Kelly was a patron of Kroger, and his truck was legally parked on April 20, 2023. It was written after Kroger had the opportunity to review the surveillance video of the incident. Kroger knew Kelly would place reliance on the letter in his defense of the assault charged filed by Kroger's agent, Nolan Booth at Horn Lake Municipal Court. The letter, Exhibit 3, was not withdrawn. Kroger's letter was not just relied on by Kelly at the municipal court, but formed the basis of his present civil action.

[Plaintiff's brief at 8]. In his deposition, Franklin read out loud the letter he had written, which asserted as follows:

> My name is Lorenzo Franklin, store manager for Kroger located at 7251 Interstate Boulevard in 3 Horn Lake, Mississippi, 38637. This letter is to confirm that on Thursday, April 20, Mr. Vaughn Kelly was a patron at the store. Mr. Kelly was not in any violations of parking an unauthorized vehicle due to the fact that he was a customer at our location. As store leader, I did not authorize vehicle to be towed. Any further questions or inquiries, please contact me at 662-349-8334. Kind regards, Lorenzo Franklin, store manager.

[Franklin depo. at 58].

It seems likely that, in writing the letter, Franklin was attempting to do plaintiff a favor, and it seems doubtful to this court that he ever dreamed that the letter would serve as the basis for a lawsuit against his employer. Nevertheless, that is what has occurred in this case and, as such, it may be a case of "no good deed goes unpunished." Still, a jury may well conclude that, whatever Franklin's motivation for writing the letter, he was providing his honest views regarding the events which led to this lawsuit, and it is difficult to reconcile those views with Kroger's position in this case. Indeed, in seeking dismissal of plaintiff's claim that it acted negligently in having his vehicle towed, Kroger relies upon arguments that 1) plaintiff was a trespasser, not an invitee at its store and 2) since he was illegally parked, it acted reasonably in

3

ordering A1 to tow it. [Brief at 5-7]. Clearly, each of these arguments is heavily contradicted by the views which Franklin expressed in his letter.

This court notes that, Franklin's letter aside, plaintiff also relies upon his own testimony that he intended to buy ice and drinks once he had gone to the bathroom. Specifically, plaintiff testified in his deposition that:

> Q. And then after Zaxbys, you went to
> A. Kroger. To get some water and to get some ice, because, you know, like I said, I needed some ice and water -- had -- because -- I had a couple of cold drinks in the cooler, and the ice was gone from the time I left home, I didn't have anymore ice in my cooler and I needed some ice and water, so I drove. over to Kroger.
> Q. And when you -- when you arrived at Kroger, where did you first park?
> A. The same place where I was parked where the whole incident happened. I pulled toward the back where they allow trucks to pull, on the side. They got room for trucks to -- when they come to Kroger, to pull on the side.

[Exhibit P2, Kelly's Depo, p. 17]. As noted previously, Kroger emphasizes that Franklin never actually made any purchase at the store, but it strikes this court that plaintiff has a reasonable jury argument that he would have done so if he had not discovered his vehicle in the process of being towed. At the end of the day, the truthfulness of plaintiff's testimony regarding his intent in stopping at the Horn Lake Kroger is a question of credibility, and jurors are, without question, best positioned to make such credibility determinations.

This court is, once again, required to view the facts in the light most favorable to plaintiff at this stage of the proceedings, and it therefore has little difficulty in concluding that genuine issues of fact exist regarding plaintiff's claim that Kroger acted negligently in having his vehicle towed. This court does agree with Kroger that plaintiff's claim based upon the alleged negligent hiring of CAC lacks merit, since the evidence presently before it clearly supports a conclusion that the towing company acted as an independent contractor in this case. Indeed, it seems clear to this court that, when Kroger's employee made the decision to call A1 to tow plaintiff's truck,

4

he could hardly have anticipated that the altercation and subsequent litigation between Booth and plaintiff would occur. Moreover, the fact that Franklin wrote a letter to assist plaintiff in getting his truck back further makes it even clearer that any liability faced by Kroger in this case should relate solely to any negligence on its part in having his truck towed. In so stating, this court emphasizes that the fact that Kroger was (apparently) trying to help plaintiff defend himself against an assault charge brought by Booth clearly supports a conclusion that there was a separation of identities and decision-making processes between Kroger and the other defendants in this case. This court therefore concludes that Kroger may only be held liable for its own alleged negligence in calling a tow truck in the first place.

This court concludes that triable fact issues also exist as to plaintiff's claims against Booth and CAC, in particular regarding his malicious prosecution claim against these defendants. To establish a claim for malicious prosecution under Mississippi law, a plaintiff must demonstrate:

(1) institution or continuance of a judicial proceeding;

(2) at the instance of the defendant;

(3) termination of the proceeding in favor of the plaintiff;

(4) malice in instituting the proceeding and want of probable cause; and

(5) damages resulting from the action or prosecution.

*State for Use and Benefit of Foster v. Turner*, 319 So. 2d 233 (Miss. 1975); *Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439 (Miss. 1986); *Mississippi Road Supply Co., Inc. v. Zurich-American Ins. Co.,* 501 So. 2d 412 (Miss. 1987).

Significantly, CAC only takes issue with plaintiff's ability to meet the fourth element, relating to malice. In this vein, it is well settled that, in determining whether a defendant acted

5

with malice, the court must examine the defendant's state of mind. *Page v. Wiggins,* 595 So. 2d 1291 (Miss. 1992). Courts utilize a subjective element, namely an honest belief in the guilt of the person accused, and an objective element - a reasonable grounds for such belief - to ascertain whether the defendant had probable cause for instituting the proceeding. *Page v. Wiggins,* 595 So. 2d 1291 (Miss. 1992*); Nassar v. Concordia Rod and Gun Club, Inc.,* 682 So. 2d 1035 (Miss. 1996*)*. The defendant's subjective state of mind is relevant in determining whether the proceeding was maliciously instituted. *Owens v. Kroger Co.,* 430 So. 2d 843 (Miss. 1983). The malice requirement as used in the law of malicious prosecution is concerned with whether the defendant instituted the legal proceeding primarily for a purpose other than bringing an offender to justice. *Benjamin v. Hooper Electronic Supply Co., Inc.,* 568 So. 2d 1182, 1184 (Miss. 1990).

In concluding that a jury should decide the issue of malice in this case, this court emphasizes once again that evaluating the credibility and state of mind of a particular witness is a function which jurors are uniquely well suited to perform. It seems clear that, in this case, jurors' assessment of the credibility of plaintiff and Booth will be of crucial importance, since they provide descriptions of the altercation between them which could hardly be more different. Indeed, Booth testified in his deposition that:

> Q. Well, during that ten minutes, what were you doing?
> A. Well, obviously, putting -- getting the equipment together to tow the truck.
> Q. Okay. And when after ten minutes Mr. Kelly arrived, what was -- what was the -- what -- what did you ask him?
> A. I didn't ask him nothing. He's crazy. He went psycho.
> Q. Okay.
> A. I mean, he started hollering and pushing me. I mean, he had a hammer swinging at me. I mean, what am I supposed to do?
> Q. Okay. And was it you that called the 911 -- I mean, the police or Mr. Kelly?
> 21 A. I did

[Booth Depo at 30].

For his part, plaintiff insists that the altercation began when:

6

> Booth drove his truck with such fury towards the front of my truck where I stood until his tow truck touched my chest. He then tried to use the control of the tow truck, came to the back of the tow truck, and tried to push me away, yelling "get out of the way or you're going to get hurt." As Nolan Booth cursed, yelled, and threatened to shoot me with a gun, I moved out of his way." Fearing for my life, I called the emergency number for law enforcement for assistance.

[Affidavit at 1-2]. Based on the above descriptions of the altercation in this case, it seems clear to this court that either plaintiff or Booth is not telling the truth, and, once again, jurors are uniquely well suited to make credibility evaluations such as these. Moreover, if jurors conclude that it is Booth who lied regarding the basic facts of this case, then they could reasonably conclude that he "instituted the legal proceeding primarily for a purpose other than bringing an offender to justice," *Benjamin,* 568 So. 2d at 1184, and thus acted with malice.

In light of the foregoing, this court concludes that genuine issues of material fact exist regarding plaintiff's malicious prosecution claim against Booth and CAC. This court does agree with these defendants, however, that plaintiff has overplayed his hand in this context by asserting intentional and negligent infliction of emotional distress against them. In the court's view, Booth's alleged actions in barely touching plaintiff's chest with his vehicle do not meet the heavy requirements for these torts, for essentially the reasons stated in defendants' thorough briefing. Moreover, this court believes that it would be quite problematic to apply these torts to Booth's decision to file assault charges against plaintiff, particularly since the tort of malicious prosecution exists to address any alleged malice which may have existed in this context.

This court likewise finds defendants' arguments relating to the negligence per se claims asserted by plaintiff to be persuasive. It is well established that violation of a statute or ordinance constitutes negligence per se and may support a cause of action in tort where (1) the plaintiff is within the class protected by the statute, and (2) the harm sustained is the type sought to be prevented by the statute. *Whitehead v. Food Max of Miss. Inc.,* 163 F.3d 265, 272 (5th

7

Cir.1998) *(interpreting Mississippi law)(citing O'Cain v. Harvey Freeman & Sons, Inc.,* 603 So.2d 824, 830 (Miss.1991)). Moreover, even if a defendant breaches a statutory duty and is within the class protected by the violation, the plaintiff must still show that the violation proximately caused the injury. *Benson v. Rather,* 211 So. 3d 748, 756 (Miss. Ct. App. 2016). This court agrees with the arguments in defendants' briefing that, based on this authority, plaintiff is unable to use any licensing requirements which Booth and CAC may have violated as a basis for recovering for any damages he may have suffered in this case. Defendants' motion to dismiss plaintiff's negligence per se claims will therefore be granted.

It is therefore ordered that defendants' motions for summary judgment [95-1, 97-1] are granted in part and denied in part, as more specifically set forth above.[1]

This, the 20th day of March, 2025.

    /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

---

[1] To the extent that any arguable claims may be asserted by plaintiff which are not addressed in this order, those claims will be addressed at the directed verdict and/or jury instruction phase of trial.