IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**VAUGHN KELLY, SR.**                                                                **PLAINTIFF**

**VS.**                        **CIVIL ACTION NO. 3:24-cv-11-MPM-JMV**

**KROGER LIMITED PARTNERSHIP I,**
**CAC OPERATIONS LLC,**
**AND NOLAN BOOTH**                                      **DEFENDANTS**

**ORDER**

This cause comes before the court on its own motion, continuing the trial in the above-entitled action. This court's decision to continue this matter arises from its consideration of the motions in limine in this case, which caused it to view this case in a new light. In so stating, this court notes that, in its motions in limine, CAC, doing business as A1 Towing, seeks to exclude an online article, published on the website overdriveonline.com, which includes a description of alleged "predatory towing practices" by A1 and its employees.[1] The article in question is quite negative, and it includes a link to another article by a Memphis TV station which alleges, among other things, that:

> The Shelby County District Attorney's Office has dropped criminal charges against at least four A1's Towing & Hauling employees arrested in six different incidents involving the towing of 18-wheelers. In five of the cases, the A1's tow truck drivers were charged with carjacking after police said they took the big rigs by force. In another case, an A1's employee was charged with aggravated assault.[2]

These articles were, frankly, an eye-opener to this court, even though they appear to be hearsay and thus of doubtful admissibility at trial.

---

[1] https://www.overdriveonline.com/regulations/article/15635856/truckers-carjacked-roughed-up-by-a1-towing-in-memphis-reportv
[2] https://wreg.com/news/local/shelby-county-da-dismisses-several-cases-involving-a1s-employees/

1

This court notes that, while the Memphis TV station's article states that the charges in question were dropped, the District Attorney's office is quoted in the Overdrive article as saying that:

> The Shelby County District Attorney's Office did recently drop charges against at least four A1's Towing & Hauling employees arrested in six different incidents involving the towing of 18-wheelers, but a spokesperson for the DA stressed that the case was only dropped in the "very limited" general sessions court.
> "The case was dismissed due to lack of prosecution," said Erica Williams, director of communications at the Shelby County DA. "All the victims all live out of state, so it does not mean that there is no case. The charges were all dropped in general session, but we are still pursuing the case and is expected to go to criminal court."
> The Memphis Permits Office announced an investigation into the company, according to WREG, and the Arkansas Towing and Recovery Board suspended A1's permit to boot vehicles for 60 days.

*Id.* This court notes that this Overdrive article was written on October 11, 2023, and the assertion by the DA's spokesperson that the charges in question were still ongoing causes this court to wonder whether the charges in question have been resolved, and, if so, in what manner. This court further notes that, among the allegations of the overdriveonline.com article is an assertion that:

> Memphis local news outlet WREG has long documented A1's reported abuses, including an incident in July when A1 agents reportedly kicked a driver to the ground and held him down as they drove off with the truck. That was after the driver had his dispatcher pay A1 $265 to remove a boot. The driver had to pay an additional $2,535 to get the truck back the same night, according to WREG.

*Id.*

Once again, this court seriously doubts the admissibility of these online articles, yet, at the same time, it cannot help but conclude that it may be dealing with a very different sort of towing company than it had previously assumed to be the case. In so stating, this court notes that none of these online articles were included as exhibits to plaintiff's response to the motions for summary judgment, and they are, as such, new evidence as far as this court is concerned.

2

Indeed, this court had previously assumed that CAC was, more or less, like any other towing company, but it now has concerns that it may be dealing with a company which has intentionally adopted a business model of using highly aggressive towing practices, allegedly up to and including assaults on drivers who resist having their vehicles towed. It strikes this court that, if CAC is not such a company, then it has been exceedingly unlucky to have attracted such extensive negative attention from the Shelby County District Attorney's Office, the Memphis Permits Office, the Arkansas Towing and Recovery Board and multiple media outlets.

While it seems likely to this court that CAC is, in fact, highly aggressive in its towing practices, it may be difficult for plaintiff to introduce this fact (if true) to a jury. In so stating, this court notes that FRE 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In his brief, plaintiff argues that the online articles should be deemed admissible because "reputation concerning character" is considered non-hearsay evidence under FRE 803(21). In so arguing, however, plaintiff ignores the fact that FRE 405(a) provides that "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Thus, reputation evidence regarding a particular character trait of a defendant is only admissible in cases where the character evidence itself is admissible, and 404(a)(1) makes it clear that character evidence may not be admitted to show that the person or business in question acted in conformity with that character on a particular occasion. It seems clear to this court that plaintiff would use CAC's reputation for highly aggressive towing practices for just this purpose, and he has therefore given it no reason to conclude that the online articles in question should be admitted at trial.

Nevertheless, this court cannot help but conclude that the online articles tend to suggest that there may be non-hearsay evidence available regarding CAC's towing and business practices which may, in fact, be admissible. In so stating, this court notes that FRE 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Given the latter provision, it at least seems possible that plaintiff would be able to develop admissible evidence of prior bad acts on the part of CAC which demonstrate, for example, that the altercation in this case was not simply a random confrontation, but, was, rather, part of an "intent" or "plan" on the part of CAC to have its drivers use highly aggressive techniques in towing vehicles. Moreover, while this court believes that plaintiff could and should have done a better job using the discovery process to attempt to obtain admissible evidence of any prior bad acts within the scope of FRE 404(b), it is also reluctant to give the jury a whitewashed version of the evidence in this case.

This court regards litigation as a search for the truth, and it therefore concludes that it should continue the trial in this matter and give plaintiff one final opportunity to do the legwork necessary to develop non-hearsay evidence which meets the requirements of FRE 404(b). This will also give this court an opportunity to decide whether it should reconsider its decision to dismiss the negligent hiring claim against Kroger. In so stating, this court wishes to emphasize that nothing in this order involves any sort of definitive ruling, but it does seem clear that there is, at least potentially, much more to this case than it had originally believed. Under these

circumstances, this court believes that it would be unwise to rush to trial, and it concludes that there should be a limited period of additional discovery in this case.

    It is therefore ordered that the trial in this matter is continued until a date to be determined later. This court requests that Judge Virden set an additional period of limited discovery, consistent with this order.

    This, the 15th day of May, 2025.

                                                                  /s/ Michael P. Mills  
                                                  UNITED STATES DISTRICT JUDGE  
                                                  NORTHERN DISTRICT OF MISSISSIPPI