**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**VAUGHN KELLY, SR.**                                                                                        **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 3:24-cv-11-MPM-JMV**

**KROGER LIMITED PARTNERSHIP I,
CAC OPERATIONS LLC,
AND NOLAN BOOTH**                                                                         **DEFENDANTS**

**ORDER**

This cause comes before the court on the parties' motions *in limine* in the above-entitled

action.  Having considered the memoranda and submissions of the parties, this court is prepared

to rule.

Before ruling on the parties' motions, this court will briefly discuss the relevant motion *in*

*limine* standards. "The purpose of a motion *in limine* is to allow the trial court to rule in advance

of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus*

*U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted). In

this context, "[e]vidence should not be excluded ... unless it is clearly inadmissible on all

potential grounds."  *Id.* (quoting *Fair v. Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011))

(emphasis added). Evidentiary rulings "should often be deferred until trial so that questions of

foundation, relevancy and potential prejudice can be resolved in proper context." Rivera v.

Salazar, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (*citing Sperberg v. Goodyear Tire &*

*Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975)). Moreover, the "[d]enial of a motion *in limine*

does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.

Denial merely means that without the context of trial, the court is unable to determine whether

1

the evidence in question should be excluded." *Gonzalez v. City of Three Rivers*, 2013 WL

1150003, at *1 (S.D. Tex. Feb. 8, 2013) (quoting *Hawthorne Partners v. AT&T Tech., Inc.,* 831

F.Supp. 1398, 1400 (N.D. Ill. 1993); *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460,

83 L.Ed.2d 443 (1984)).

This court has previously emphasized that "[t]he purpose of motions *in limine* is not to

re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of

Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due

to their complexity or potentially prejudicial nature, are best addressed in the context of a motion

*in limine*." *Maggette v. BL Development Corp*., 2011 WL 2134578, at *4 (N.D. Miss. May 21,

2011) (emphasis in original); *see also Estate of Wilson v. Mariner Health Care, Inc*., 2008 WL

5255819, at *1 (N.D. Miss. Dec. 16, 2008) ("[M]otions *in limine* should be narrowly tailored to

address issues which will likely arise at trial and which require a pre-trial ruling due to their

complexity and/or the possibility of prejudice if raised in a contemporaneous objection.").

Additionally, a motion "set[ting] forth a lengthy laundry list of matters, most of them of a highly

vague nature ... constitutes an improper 'shotgun' motion which fails to meet this court's

standards for motions *in limine*." *Estate of Wilson*, 2008 WL 5255819, at *1.

With the above authorities in mind, this court now turns to the motions *in limine* in this

case.  In doing so, this court first notes that, shortly before the previously-scheduled trial in this

matter, it chose to issue a continuance based upon concerns arising from its consideration of the

motions *in limine* which were filed by defendant CAC (which does business as A1 Towing) in

this case.  In its motions *in limine*, CAC sought to preclude evidence of "any testimony of

Department of Transportation regulations or suspension[s]" and "any news articles or online

2

posts" and any "evidence of pending criminal charges against the owner of A1." [Docket entry 144].

In reviewing the evidentiary submissions in question, it became clear to this court that they involved highly damaging proof that CAC had faced numerous regulatory and criminal proceedings in Tennessee, Arkansas and Mississippi regarding its having allegedly adopted highly aggressive business practices relating to the conduct of its tow drivers. In expressing its tentative views regarding this evidence, this court wrote that:

> This cause comes before the court on its own motion, continuing the trial in the above-entitled action. This court's decision to continue this matter arises from its consideration of the motions in limine in this case, which caused it to view this case in a new light. In so stating, this court notes that, in its motions in limine, CAC, doing business as A1 Towing, seeks to exclude an online article, published on the website overdriveonline.com, which includes a description of alleged "predatory towing practices" by A1 and its employees.[1] The article in question is quite negative, and it includes a link to another article by a Memphis TV station which alleges, among other things, that:
>> The Shelby County District Attorney's Office has dropped criminal charges against at least four A1's Towing & Hauling employees arrested in six different incidents involving the towing of 18-wheelers. In five of the cases, the A1's tow truck drivers were charged with carjacking after police said they took the big rigs by force. In another case, an A1's employee was charged with aggravated assault.[2]
> These articles were, frankly, an eye-opener to this court, even though they appear to be hearsay and thus of doubtful admissibility at trial.
> This court notes that, while the Memphis TV station's article states that the charges in question were dropped, the District Attorney's office is quoted in the Overdrive article as saying that:
>> The Shelby County District Attorney's Office did recently drop charges against at least four A1's Towing & Hauling employees arrested in six different incidents involving the towing of 18-wheelers, but a spokesperson for the DA stressed that the case was only dropped in the "very limited" general sessions court.
>> "The case was dismissed due to lack of prosecution," said Erica Williams, director of communications at the Shelby County DA. "All the victims all live out of state, so it does not mean that there is no case. The charges were all dropped in general session, but we are still pursuing the case and is expected to go to criminal court."

---

[1] https://www.overdriveonline.com/regulations/article/15635856/truckers-carjacked-roughed-up-by-a1-towing-in-memphis-reportv

[2] https://wreg.com/news/local/shelby-county-da-dismisses-several-cases-involving-a1s-employees/

The Memphis Permits Office announced an investigation into the company, according to WREG, and the Arkansas Towing and Recovery Board suspended A1's permit to boot vehicles for 60 days.

*Id.* This court notes that this Overdrive article was written on October 11, 2023, and the assertion by the DA's spokesperson that the charges in question were still ongoing causes this court to wonder whether the charges in question have been resolved, and, if so, in what manner.

This court further notes that, among the allegations of the overdriveonline.com article is an assertion that:

Memphis local news outlet WREG has long documented A1's reported abuses, including an incident in July when A1 agents reportedly kicked a driver to the ground and held him down as they drove off with the truck. That was after the driver had his dispatcher pay A1 $265 to remove a boot. The driver had to pay an additional $2,535 to get the truck back the same night, according to WREG.

[Docket entry 164 at 1-2].

In explaining how this evidence had altered its view of CAC and, indeed, the case as a whole, this court wrote that:

Once again, this court seriously doubts the admissibility of these online articles, yet, at the same time, it cannot help but conclude that it may be dealing with a very different sort of towing company than it had previously assumed to be the case. In so stating, this court notes that none of these online articles were included as exhibits to plaintiff's response to the motions for summary judgment, and they are, as such, new evidence as far as this court is concerned. Indeed, this court had previously assumed that CAC was, more or less, like any other towing company, but it now has concerns that it may be dealing with a company which has intentionally adopted a business model of using highly aggressive towing practices, allegedly up to and including assaults on drivers who resist having their vehicles towed. It strikes this court that, if CAC is not such a company, then it has been exceedingly unlucky to have attracted such extensive negative attention from the Shelby County District Attorney's Office, the Memphis Permits Office, the Arkansas Towing and Recovery Board and multiple media outlets.

While it seems likely to this court that CAC is, in fact, highly aggressive in its towing practices, it may be difficult for plaintiff to introduce this fact (if true) to a jury. In so stating, this court notes that FRE 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In his brief, plaintiff argues that the online articles should be deemed admissible because "reputation concerning character" is considered non-hearsay evidence under FRE 803(21). In so arguing, however, plaintiff ignores the fact that FRE 405(a) provides that "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Thus, reputation evidence regarding a particular character trait of a defendant is only admissible in cases where the character evidence itself is admissible, and 404(a)(1) makes it clear that

4

character evidence may not be admitted to show that the person or business in question acted in conformity with that character on a particular occasion. It seems clear to this court that plaintiff would use CAC's reputation for highly aggressive towing practices for just this purpose, and he has therefore given it no reason to conclude that the online articles in question should be admitted at trial.

Nevertheless, this court cannot help but conclude that the online articles tend to suggest that there may be non-hearsay evidence available regarding CAC's towing and business practices which may, in fact, be admissible. In so stating, this court notes that FRE 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Given the latter provision, it at least seems possible that plaintiff would be able to develop admissible evidence of prior bad acts on the part of CAC which demonstrate, for example, that the altercation in this case was not simply a random confrontation, but, was, rather, part of an "intent" or "plan" on the part of CAC to have its drivers use highly aggressive techniques in towing vehicles. Moreover, while this court believes that plaintiff could and should have done a better job using the discovery process to attempt to obtain admissible evidence of any prior bad acts within the scope of FRE 404(b), it is also reluctant to give the jury a whitewashed version of the evidence in this case.

This court regards litigation as a search for the truth, and it therefore concludes that it should continue the trial in this matter and give plaintiff one final opportunity to do the legwork necessary to develop non-hearsay evidence which meets the requirements of FRE 404(b). This will also give this court an opportunity to decide whether it should reconsider its decision to dismiss the negligent hiring claim against Kroger. In so stating, this court wishes to emphasize that nothing in this order involves any sort of definitive ruling, but it does seem clear that there is, at least potentially, much more to this case than it had originally believed. Under these circumstances, this court believes that it would be unwise to rush to trial, and it concludes that there should be a limited period of additional discovery in this case.

[Docket entry 164 at 3-4].

Following this court's order, the parties conducted discovery regarding CAC's adverse criminal and administrative history, and this court anticipated that both sides would file renewed motions *in limine* which would seek rulings regarding the admissibility of the specific evidence which was developed during that discovery. For its part, however, CAC has chosen to stand by its original motions *in limine*, even though these motions have, in the court's view, been largely

superseded by events.[3]  Kroger did file a renewed motion *in limine*, which was joined by CAC, in which defendants sought to "bar[] plaintiff from introducing Exhibits P. 5 and P.11-66" in this case.  [Docket entry 215 at 1.  It seems clear from defendants' motion that these exhibits represent plaintiff's evidence developed during discovery, but, crucially, defendants did not attach the actual exhibits to their motion so that this court could review them for itself.

On October 20, 2925, this court, through its staff, emailed counsel for defendants to inquire whether the documents which they sought to exclude were anywhere to be found on the docket.  Counsel responded in the negative, though he offered to email them to this court. [October 20, 2025 email at 1.  In explaining why the documents in question had not been attached to their motion *in limine*, counsel for defendants explained that "[a]t the time the motion was filed, the exhibits had not been bates labeled."  *Id.*  For its part, this court believes that the requirement that documents be attached to any motions to exclude them is a clear and obvious one.  Moreover, given the (apparently) damaging nature of these documents, this court wonders whether defendants' actions were motivated by a desire to avoid having them reproduced, for all to see, on a public court docket.  Regardless of defendants' motivations in this regard, this court is clearly not in a position to rule upon the admissibility of documents which were not attached to the motion.  Indeed, the content of the documents in question should have been specifically addressed in defendants' motions *in limine*, and plaintiff should have had an opportunity to respond to defendants' specific arguments in his own briefing.  This court will therefore deny defendants' motion to exclude these documents before trial.

---

[3]To the extent that these motions are still relevant today, this court will address them in the context of defendants' joint motion *in limine* discussed below.

While this court is therefore not in a position to rule upon these specific documents in this order, it will make some general observations which will hopefully assist the parties in preparing for trial. In setting forth their generalized arguments in their motion *in limine*, defendants write that:

> If the evidence is introduced for the purpose of showing that a person acted in accordance with his character on a given occasion, then the evidence is inadmissible unless it falls within one of the exceptions noted in Rule 404. *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791 (5th Cir. 1979). Plaintiff's intended use of prior and ongoing complaints is nothing more than an attempt to show that CAC acted "in accordance with" a supposed predatory character. Rule 404(b)(1) expressly prohibits using prior acts to prove conformity. Furthermore, "[t]o offer evidence of a habit, a party must at least demonstrate a regular practice of meeting a particular kind of situation with a specific type of conduct." *United States v. Anderson,* 755 F.3d 782, 794 (5th Cir. 2014). "Evidence of habit is not lightly established." *Jones v. S. Pac. R.R.,* 962 F.2d 447, 449 (5th Cir. 1992). "A habit … is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic." *Reyes,* 589 F.2d at 794 quoting <u>McCormick on Evidence,</u> 195 at 462-63 (2d ed. 1972).
> Plaintiff's misguided attempt to rely on out of state complaints, investigations, and regulatory filings, do not establish the type of regular and routine practice required under Rule 406. Plaintiff cannot, in turn, use this information to suggest Kroger acted negligently in calling and requesting that Plaintiff's commercial vehicle be towed from its premises.

[Brief at 5-6].

In making these arguments, defendants do not address this court's prior findings, in its order continuing this case, that:

> [T]his court notes that FRE 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Given the latter provision, it at least seems possible that plaintiff would be able to develop admissible evidence of prior bad acts on the part of CAC which demonstrate, for example, that the altercation in this case was not simply a random confrontation, but, was, rather, part of an "intent" or "plan" on the part of CAC to have its drivers use highly aggressive techniques in towing vehicles.

7

[Slip op. at 3].

In the court's view, the administrative and criminal proceedings which have, it seems undisputed, been lodged against CAC based upon allegedly aggressive towing practices clearly tend to suggest that defendant has developed an "intent" or "plan" to conduct business in a certain manner which seems relevant to this lawsuit. Moreover, while there is often a thin line which separates inadmissible character evidence from admissible 404(b) evidence, it appears to this court that evidence that CAC has made a conscious decision to utilize highly aggressive towing practices falls on the admissible side of the ledger. Moreover, this court believes that defendants are off-base in describing CAC's alleged practices in this regard as a "habit," since that term is generally used to describe acts that a person engages in a more or less without thinking about them. In this case, however, this court is inclined to view CAC's allegedly aggressive towing practicing not as a "habit," but, rather, as a specific business "intent" or "plan" within the meaning of Rule 404(b). In so stating, it strikes this court as implausible that numerous different CAC tow drivers would have engaged in aggressive towing practices without some sort of specific marching orders from above, and such a conscious plan can hardly be described as a "habit."

In its prior order, this court's objection to plaintiff's use of a news article to establish these towing practices was that the article was hearsay, and in its renewed motion *in limine*, defendants assert that:

> Finally, the aforementioned exhibits Plaintiff seeks to introduce are riddled with hearsay. These out of court statements are classic hearsay under Federal Rule of Evidence 801 and are inadmissible because no exception applies.

[Brief at 5]. To this argument, this court must first wonder: what exhibits? Obviously, defendants make reference to the documents which they didn't bother to attach to their motion *in*

8

*limine*, but this is clearly improper. Moreover, the vague and conclusory arguments quoted above are clearly insufficient to support a finding of hearsay, even if the documents in question had been attached to the motion. In light of the foregoing, this court believes that defendants have quite arguably waived their right to object to the documents in question, but, even if they haven't, it is virtually impossible to address these issues properly without being able to consider the documents in question in light of specific evidentiary arguments.

This court notes that one clue to the content of the exhibits in question is found in plaintiff's assertion in his response that "[d]uring limited discovery, plaintiff issued subpoenas and obtained evidence of complaints and sanctions by regulatory authorities against CAC from City of Memphis, Tennessee and Arkansas Towing and Recovery Board." [Docket entry 223 at 1]. Based upon this description, this court has considerable doubt whether the exhibits in question are offered "to prove the truth of the matter asserted in the statement" in such a manner as to constitute hearsay within the meaning of Fed. R. Evid. 801(c). In so stating, this court notes that, if plaintiff were to seek to produce evidence of a complaint lodged against CAC in, say, Arkansas, then this court might conceivably conclude that the statement would be hearsay as to the specific assertions of wrongdoing against CAC in the complaint, but that the (possibly redacted) document was admissible for the purposes of simply proving that a complaint was filed against CAC in Arkansas.

It seems quite arguable to this court that evidence of the filing of a complaint against CAC would be a non-hearsay "verbal act" within the meaning of the Federal Rules of Evidence. In a 2001 decision, the Tenth Circuit explained non-hearsay verbal acts as follows:

> The Federal Rules of Evidence define "hearsay" as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). By contrast, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed.R.Evid.

801 advisory committee's note (1972) .... The verbal acts doctrine applies only where the out-of-court statement actually "affects the legal rights of the parties, or where 'legal consequences flow from the fact that the words were said.' " *U.S. v. Pungitore*, 965 F. Supp. 666, 673 n. 1 (E.D.Pa.1997) (quoting Black's Law Dictionary 1558 (6th ed.1990)).

*Echo Acceptance Corp. v. Household Retail Services, Inc*., 267 F.3d 1068, 1087 (10th Cir. 2001). It is, in the absence of the documents themselves, impossible for this court to determine whether one or more of them might constitute a non-hearsay "verbal act," but it seems quite possible that they do. This court further notes that FRE 803 provides for a hearsay exception for

> **(8)** *Public Records*
> A record or statement of a public office if:
> **(A)** it sets out:
> **(i)** the office's activities; . . .
> **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation;

It certainly seems possible to this court that a particular document might fall under this exception, but, once again, the record and briefing simply do not leave it in a position to make an informed and intelligent ruling in this regard.

Finally, this court notes that FRE 807 sets forth a "residual" hearsay exception which provides as follows:

> **(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
> **(b) Notice.** The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

10

As quoted above, plaintiff asserts that he sent formal discovery requests to responsible Tennessee and Arkansas authorities and that they responded with certain information regarding their prosecutions against CAC. Even assuming that these responses do not fall under the "public records" hearsay exception, they strike this court as being quite reliable, and it is difficult to discern how they would not meet the requirements of the residual hearsay exception, quoted above. In so stating, this court emphasizes that CAC does not appear to deny that these prosecutions actually took place, and, as the defendant in those cases, it was certainly aware of them long before the trial in this matter.

Defendant contends that the fact that these prosecutions occurred in different states reduces their probative value, but this court does not agree. Indeed, as far as this court can discern, encouraging physical assaults by tow truck drivers on vehicle owners is not something permitted by any state in this country, and it seems exceedingly unlikely that CAC would have conducted business in north Mississippi any differently than it did in southeast Arkansas or west Tennessee. Accordingly, this court will tentatively rule that plaintiff should be allowed to present reliable public records regarding the simple fact that CAC was prosecuted or administratively sanctioned for other acts of aggressive towing practices by its drivers, with the purpose of establishing that defendant had developed an "intent" or "plan" to conduct business in this manner within the meaning of 404(b). In the court's view, documents relating to such prosecutions or administrative actions likely constitute non-hearsay verbal acts and/or non-hearsay public records, although this will, inevitably, depend on the exact nature of those documents.

Having said that, this court is inclined to conclude that any specific factual allegations in such documents should be redacted out of hearsay, relevance and prejudice concerns or

11

otherwise kept from the jury's attention. This court believes that the evidence in this case should be primarily about *this* case, and not other cases in which CAC was prosecuted or administratively sanctioned. For this reason, this court will not allow plaintiff to belabor the point on this issue. Still, this court does not believe that the interests of justice would be furthered by whitewashing CAC as a towing company, so long as the evidence in this regard is reliable and is not given undue emphasis in this case. At to Kroger, this court agrees with its argument that the mere fact that CAC may have adopted highly aggressive towing practices does not necessarily mean that Kroger knew or should have known about those practices. However, this court reiterates its previously-stated decision to first consider the evidence developed at trial before deciding at the directed verdict stage whether fact issues exist regarding a negligent hiring claim against Kroger. Having hopefully provided some guidance regarding the upcoming trial, this court will now address other motions *in limine* filed in this case.

This court now turns to Kroger's motions *in limine*, each of which seeks for this court to limit plaintiff from "arguing, suggesting or implying" various things at trial. This language seems most relevant to plaintiff's closing argument before the jury, and, as to such arguments, courts generally grant litigants a certain degree of leeway to argue their case, so long as it represents one good faith interpretation of the evidence at trial. That will be this court's guidepost in entertaining any objections regarding improper argument, but it would be premature for this court to rule upon what either side may or may not argue in their summations at trial. That being the case, the court's observations below should be regarded as preliminary ones, subject to alteration depending upon the evidence and arguments which are presented at trial.

1. **Arguing, suggesting, or implying that Kroger's manager, Lorenzo Franklin, intended to voluntarily testify on his behalf, exonerating Plaintiff of any wrongdoing in the separate criminal matter.**

12

In support of this motion, Kroger writes that:

Kroger anticipates that Plaintiff may attempt to argue, suggest, or imply that Kroger's manager, Lorenzo Franklin, intended to voluntarily testify on behalf of Plaintiff in the separate criminal matter. However, the undisputed facts demonstrate that Franklin was subpoenaed to testify in the criminal matter. On the day of the hearing, Franklin was questioned by the local prosecutor regarding the fact he was not working or on duty at the time of the incident. Based on the fact he was not present and had no personal knowledge of the incident, the prosecutor determined that Franklin's testimony was unnecessary, and he was released from the subpoena. The criminal matter involved a simple assault charge filed by Booth against Plaintiff and did not implicate Kroger in any way. It is anticipated that Plaintiff may attempt to suggest or infer that Franklin intended to testify voluntarily that Plaintiff was a patron of the store on the day of the incident. Neither Franklin, nor any other Kroger employee, was a witness to the altercation between Booth and Plaintiff. No matter what Plaintiff believes Franklin intended to testify to, his testimony would have little to no weight in determining the facts of the altercation. Furthermore, Plaintiff's status as a store patron, or not, is in no way determinative of whether he assaulted Booth. Plaintiff's suggestion that Franklin intended to testify voluntarily is misleading and has no evidentiary basis.

[Brief at 3-4].

**Ruling:** Assuming that the evidence supports Kroger's assertion that Franklin was subpoenaed to testify at plaintiff's criminal trial, then this court agrees that it would be improper for plaintiff to argue that Franklin was voluntarily seeking to testify in order to assist him in the criminal assault proceedings. However, plaintiff would, in fact, appear to have a good faith basis to argue that, if Franklin had testified at trial, then he would have done so consistent with his written statement, in which he plainly stated his belief that plaintiff was a patron at the store. This written statement is clearly a non-hearsay admission by a party opponent, and it strikes this court as being relevant evidence in this case. That being the case, this court is inclined to admit this written statement and, assuming it does so, to allow plaintiff to make reasonable inferences from that statement in his closing arguments. However, this court tends to agree with Kroger that representing that Franklin would have asked that plaintiff be exonerated of the criminal assault charges against him would be reading too much into Franklin's statement, and plaintiff

13

should therefore limit his arguments to the representations that he actually made in his statement, and reasonable inferences from that statement.

**2. Arguing, suggesting implying that he was permitted to dispose of his soiled clothing in Kroger's dumpster simply because there were no posted signs prohibiting such conduct. Further arguing, suggesting, stating or implying that he "did the right thing" by using the store's dumpster.**

**Ruling:** In seeking to prevent plaintiff from arguing that he acted appropriately in using its dumpster to dispose of his soiled clothing, Kroger cites neither a sign on the dumpster warning against such, nor any form of public law barring this practice. Ultimately, Kroger's arguments in this regard simply represent its opinion, and this court frankly suspects that most individuals who had just soiled their underwear in their vehicle would be searching for the nearest dumpster in which to dispose of it. Indeed, this court must wonder: if a dumpster is not the correct place to dispose of soiled clothing, then what exactly is? Moreover, it can certainly be argued that using a dumpster behind a store for this purpose is preferable to using a trash can in front of the store, since fewer individuals will be confronted with foul odors, flies, or any other such unpleasantness. In arguing that plaintiff was not entitled to use its dumpster, Kroger argues that he was not a patron at the store, but, as discussed in this court's summary judgment ruling, its manager Franklin issued a written statement stating his belief that he was, in fact, a patron. This court therefore concludes that it should allow both sides to prevent their arguments regarding what plaintiff should have done in this situation, and this motion *in limine* will be denied.

**3. Arguing, suggesting, or implying that he was permitted to park his commercial vehicle behind Kroger's store due to the absence of signage explicitly prohibiting him from doing so.**

14

**4. Arguing, suggesting, or implying that Plaintiff was legally parked and did not violate traffic laws in parking behind Kroger's store.**

This court will consider these motions together, since the considerations and arguments

involved in each are very similar. In support of this motion in limine, Kroger argues that:

> Kroger anticipates Plaintiff will attempt to argue that he was permitted to park his truck behind the store due to the absence of signage explicitly prohibiting him from doing so. However, this argument is contrary to the evidence, prejudicial to Kroger, and serves only to mislead and confuse the jury. The record clearly establishes that Kroger had signs posted at the entrances to its premises explicitly stating, "No Commercial Parking – Unauthorized Vehicles Will Be Towed," and it is undisputed that these signs were in place at the time of the incident. Plaintiff himself testified that he was fully aware of Kroger's policy. The signs were strategically placed in locations where customers entering the premises could see them, and in no way limited the prohibition to all areas except the rear of the store. Stated differently, the prohibition of no commercial parking applied to the entire premises.
> The argument that Plaintiff was allowed to park behind the store simply because there were no signs explicitly prohibiting parking in the rear of the store is flawed. The posted signs are broadly worded and simply state, "No Commercial Parking." Plaintiff argues that the area behind the store is not covered by the general prohibition of commercial parking. This self-serving argument should be prohibited.

[Brief at 6].

In so arguing, Kroger concedes that plaintiff violated no actual law in this regard, writing

that:

> Kroger in its defense of this matter has never asserted that Plaintiff was illegally parked in the sense of violating some traffic or parking law; rather, the evidence is clear that Kroger had a posted and known policy of prohibiting the parking of commercial vehicles. Ultimately, this case centers around Kroger exercising its rights in enforcing its policy and in so doing, calling and requesting that Plaintiff's truck be towed. The question of whether Plaintiff violated a law or ordinance is not relevant.

[*Id.* at 7].

In response, plaintiff argues that:

> Kroger has not provided admissible evidence that it has signs prohibiting parking by commercial vehicles on or before April 20, 2023. Metadata of pictures Kroger relied on were taken on June 4, 2024. That is over one year since the incident is the subject matter of this lawsuit. (See ECF #135 & 135-1). Kroger did not have any sign at the rear of the store which prohibited parking by commercial vehicles. Kroger's letter clearly stated that

15

Kelly was not illegally parked. This evidence is relevant and admissible pursuant to F.R.E Rule 401.

[Brief at 4].

The issues and arguments quoted above strike this court as being rather classic fact disputes and arguments arising from each side's interpretation of those facts. Negligence trials exist partly so that each side can offer their own interpretation of the facts and argue what a reasonable person should have done under various factual scenarios. That being the case, this court can discern no good reason to limit plaintiff's arguments in the manner suggested by Kroger, and this motion *in limine* will therefore be denied.

> **5. Arguing, suggesting, or implying that Lorenzo Franklin, Kroger's store manager, stated he reviewed the video and determined Plaintiff was inside the store as a patron. Such a statement constitutes hearsay and is inadmissible. Moreover, this assertion directly contradicts Plaintiff's own sworn testimony that he never entered the store for any reason.**

It seems clear to this court that whether or not Franklin viewed video of the incident before writing the letter which has proven so helpful to plaintiff's case will likely be a crucial one at trial. It appears that Franklin and plaintiff have offered conflicting testimony in this regard, and it seems likely that whichever testimony the jury regards as most credible may well decide which side prevails in this case. In seeking to exclude this evidence, Kroger writes that:

> Plaintiff claims that prior to writing a letter to assist him in recovering his truck, Lorenzo Franklin, Kroger's store manager, first watched a surveillance video, determined Plaintiff was a store patron, and informed Plaintiff he was not illegally parked on Kroger's premises. This is contrary to Plaintiff's own sworn testimony, namely that he never entered the store on the day in question, and in fact never left the immediate vicinity of his truck. *See* Deposition of Vaughn Kelly, Plaintiff, at pp. 14-15; 18-20 [Doc. 97-1] Mr. Franklin prepared the letter based on a good faith belief that Plaintiff's representation of being a store patron were true. *See* Deposition of Lorenzo Franklin pp. 59, 66, 73, 75-76 [Doc. 97-5]. Plaintiff's contention that Mr. Franklin told him he reviewed the surveillance video before preparing the letter constitutes hearsay. In fact, it

was not until sometime after writing the letter that Mr. Franklin viewed the surveillance video and determined Plaintiff never entered the store. Id.

Under the Federal Rules of Evidence, "hearsay" is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Such statements are impermissible, contradicted by the evidence and Plaintiff's sworn deposition testimony. The alleged statement should not be considered by the jury due to the risk of unfair prejudice to Kroger.

In arguing that Franklin's statement is hearsay, Kroger completely ignores the hearsay exception for admissions by a party opponent. In this vein, FRE 801 provides that:

> **(d) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay
> **(2) *An Opposing Party's Statement* .** The statement is offered against an opposing party and:
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed;

This court is unaware of any reason why, if plaintiff testifies that Franklin made a particular statement to him in his capacity as a Kroger manager, that this statement should not be considered a rather classic example of an admission by a party opponent. Kroger offers no such reason in its briefing, and plaintiff clearly stated in his affidavit that, when he met with Franklin, this manager told him that he would review the video of the incident before offering his opinions regarding it. [Affidavit at 2]. Thus, Kroger's assertion that "Plaintiff's contention that Mr. Franklin told him he reviewed the surveillance video before preparing the letter constitutes hearsay" strikes this court as being legally incorrect, and this motion *in limine* will therefore be denied.

This court now turns to plaintiff's motions *in limine*, one of which appears to be unopposed. Specifically, plaintiff has submitted a motion *in limine* arguing that certain witnesses of his were properly disclosed in discovery and, since defendant has submitted no response arguing otherwise, this motion [219-1] will be granted. Plaintiff's other motion *in*

17

*limine* relates to objections regarding certain photographs of Kroger's parking lot which, it seems undisputed, were taken after this lawsuit was commenced. Plaintiff argues that these photographs lack relevance for this reason, and Kroger disagrees. This court concludes that this is an issue which is best reserved for trial, so that it may view the photographs, entertain arguments regarding them and then decide then whether they are relevant or not. With this caveat, plaintiff's motion [135-1] to exclude these photographs prior to trial will be dismissed without prejudice to the arguments therein being raised at trial.

In light of the foregoing, it is ordered that:

Plaintiff's March 2025 motion *in limine* [135-1] regarding certain photographs is dismissed without prejudice to the arguments being raised at trial;
Plaintiff's motion for extension of time to file his motion *in limine* [150-1] is dismissed as moot,
Plaintiff's September 2025 motion *in limine* [219-1] is granted;
Defendants' joint motion *in limine* [214-1, 216-1] regarding Plaintiff's Exhibits P-5 and P11-66 is denied;
Defendant CAC's motion *in limine* [143-1] is dismissed since the arguments therein have been superseded by events and are addressed in this court's order on defendants' joint motion *in limine*;
Defendant Kroger's motion *in limine* [132-1] is granted in part and denied in part, as more specifically set forth in this order.

So ordered, this, the 21st day of October, 2025.

   /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI