**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**VAUGHN KELLY, SR.**                                                  **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:24-cv-11-MPM-JMV**

**KROGER LIMITED PARTNERSHIP I,**
**CAC OPERATIONS LLC,**
**AND NOLAN BOOTH**                                        **DEFENDANTS**

**ORDER**

This cause comes before the court on its own motion, making certain pre-trial observations based upon the pretrial order entered in this case. In light of these observations, this court wishes to issue certain warnings and admonitions to the parties regarding the conduct of the trial in this case. This court will also give its impressions regarding the strengths and weaknesses of each party's case based upon the facts stated in the pretrial order, so that the parties may be aware of those impressions in presenting evidence at trial and, potentially, in attempting to settle their claims.

This court's first impression from the pretrial order is that there appear to be an unusually large number of objections, which raises concerns in its mind that the parties are being unnecessarily combative. In this vein, this court notes that, as discussed in its prior orders, it has serious concerns regarding defendant CAC's (apparently) aggressive towing practices, and it is concerned that this aggressiveness may extend to the manner in which it conducts the trial in this case as well. If that proves to be the case, then defendant may well try this court's patience, since it appreciates it when litigants conduct themselves with courtesy at trial. This court would accordingly suggest to the parties that they attempt to work together to come to an agreement

1

regarding some of the evidentiary disputes listed in the pretrial order, so that trial may proceed more smoothly.  Having so admonished the parties, this court will make some brief observations regarding the facts stated in the pretrial order.

This court notes that, in providing its version of the facts in the pretrial order, Kroger writes that "in October of 2022, Kroger entered into an agreement with CAC Operations, LLC d/b/a A1 Xclusive Auto for the removal, impounding, and/or booting of commercial trucks parked on the Kroger premises." [PTO at 6].  This court regards this fact as significant, since it constitutes an admission by Kroger that, over six months prior to the incident in this case, it entered into an exclusive arrangement with CAC to tow vehicles from its Horn Lake store.  In the court's view, this gives plaintiff a better argument that Kroger should have conducted due diligence regarding CAC's business practices before entering into an exclusive arrangement with it, compared to a scenario where a Kroger employee simply made a one-time decision to call CAC for a particular tow job.

This consideration aside, this court remains of the view that Kroger's position in this case is also significantly damaged by the letter written by its store manager that:

> To whom it may concern,
> My name is Lorenzo Franklin store manager for Kroger located at
> 7251 Interstate Blvd. in Horn Lake, MS 38637. This letter is to confirm
> that on Thursday April 20, Mr. Vaughn Kelly was a patron at the store.
> Mr. Kelly was not in any violations of parking an unauthorized vehicle
> due to the fact that he was a customer at our location. As store leader I
> did not authorize vehicle to be towed. Any further questions or
> inquiries please contact me at 662-349-8334.
> Kind Regards,
> Lorenzo Franklin, Store Manager

[Docket entry 116-3].  In its version of facts in the pretrial order, Kroger explains this letter as follows:

2

The following day, Plaintiff returned to Kroger and approached Lorenzo Franklin, store manager, and requested assistance getting his truck out of impound. Mr. Franklin, who had not been working the previous day, accepted as true Plaintiff's claim he was an in-store patron when his truck was towed, and prepared a letter to assist Plaintiff in recovering his truck. Sometime later Mr. Franklin reviewed the surveillance video and realized Plaintiff misrepresented his status as an in-store patron.

[PTO at 5]. Plaintiff hotly disputes Kroger's account in this regard, writing in his version of the facts that:

The plaintiff returned to Kroger's store the next day and met the store manager, Lorenzo Franklin, inside the store. After explaining his predicament to Lorenzo Franklin, he informed the plaintiff he would want to review the surveillance video of the incident. He then went inside his office and looked at the cameras while the plaintiff sat in a chair in the store. Lorenzo Franklin returned after about 30 minutes and informed the plaintiff he had seen the cameras and seen when plaintiff's truck arrived. That CAC and Booth ought not to have towed plaintiff's truck and that he would try and get them to return the truck back to the store. Lorenzo Franklin thereafter wrote a letter that clearly stated plaintiff was a patron of the store, did not park illegally and that Kroger did not authorize CAC and Booth to tow his truck.

[PTO at 4].

This disagreement appears to be a rather classic fact issue for resolution by a jury, and this court is therefore unlikely to completely dismiss Kroger from this case on directed verdict. Having said that, this court wishes to emphasize that, even assuming that it allows plaintiff's negligence claim against Kroger to go to a jury (as seems likely), this would only relate to a quite minor claim that Kroger wrongfully had plaintiff's vehicle towed. As to this issue, plaintiff does not rely solely upon Kroger's decision to hire CAC. Rather, Kroger must also confront the facts that 1) its employee chose to have plaintiff's vehicle towed and 2) the letter written by its own manager suggests that this may have been improper.

In the pretrial order, plaintiff writes that he asserts "claims for negligence and gross negligence as to Kroger for calling a tow; negligence and gross negligence hiring claim as to Kroger; negligence and gross negligence as to the manner and method of tow by CAC and Nolan

3

Booth." [PTO at 2]. Plaintiff's assertion of "gross negligence" notwithstanding, this court is rather strongly disinclined to permit plaintiff to assert a claim against Kroger for anything more than simple negligence in relation to the towing of his vehicle. This court further notes that one disputed issue in the PTO is whether "it was reasonably foreseeable that as a result of Kroger's alleged negligence, both CAC and Nolan Booth would subject Plaintiff to a malicious prosecution." [PTO at 7]. This court believes that the answer to this question should be "no," which means that plaintiff appears to have only a rather minor damages claim against Kroger, arising out of the allegedly wrongful towing of his vehicle. This court states this belief so that the partes may consider it in determining the settlement value of plaintiff's claim against Kroger.

Turning to CAC, this court reiterates its previously-stated conclusion that plaintiff should be permitted to present *limited* evidence regarding CAC's history of prosecutions and adverse administrative actions at trial, assuming that such evidence qualifies as non-hearsay under the public records exception, the "catch-all" hearsay exception, or some other hearsay exception. [*See* motion *in limine* order at 11-12, docket entry 230]. While CAC contends that this evidence constitutes impermissible character evidence, this court regards a company's decision to be highly aggressive in its towing practices as potentially relevant in showing that it had a specific business "intent" or "plan" to do so within the meaning of FRE 404(b). This court has explained its views on this issue at length and will not repeat it here. On a public policy level, this court can discern no reason why a company which decides to do business in such a reprehensible manner should not be confronted with that decision when litigation inevitably arises as a result. Having said that, this court emphasizes that the upcoming trial will be primarily about what happened in *this* case, and it will not allow plaintiff to belabor the point regarding what CAC may have done in other cases.

4

5

Having made the observations in this order, this court will reserve ruling on any other outstanding issues until trial.

This, the 10th day of June, 2026.

        /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

5