## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**VAUGHN KELLY, SR.**                                                     **PLAINTIFF**


**VS.**                                    **CIVIL ACTION NO. 3:24-cv-11-MPM-JMV**


**KROGER LIMITED PARTNERSHIP I,**
**CAC OPERATIONS LLC,**
**AND NOLAN BOOTH**                                          **DEFENDANTS**

### ORDER

This cause comes before the court on its own motion, further addressing its concerns regarding defendants' objections listed in the pretrial order. This court, through its staff, has communicated with the parties regarding these issues in email, and it has also obtained Magistrate Judge Virden's views regarding these matters.

As mentioned in its prior order, this court is concerned about the very large number of objections listed in the pretrial order. For example, the pretrial order lists sixty-six (66) exhibits sought to be introduced by plaintiff, and defendant CAC has objected to all of them, except exhibit 6. [PTO at 10-11]. As to these exhibits, CAC responded with the following objections in the pretrial order:

> P-1: Objection as to relevancy, evidence is more prejudicial than probative, and hearsay
> P-2: Objection as to relevancy, evidence is more prejudicial than probative.
> P-3: Objection as to relevancy, evidence is more prejudicial than probative.
> P-4: Objection as to relevancy, evidence is more prejudicial than probative and hearsay.
> P-5: Objection as to relevancy, evidence is more prejudicial than probative.
> P-7: Objection as to relevancy, evidence is more prejudicial than probative.
> P-8: Objection as to relevancy, evidence is more prejudicial than probative.
> P-9: Objection as to relevancy, evidence is more prejudicial than probative,
> and hearsay.
> P-10: Objection as to relevancy, evidence is more prejudicial than probative.
> P-11-66: Objection as to relevancy, evidence is more prejudicial than probative.

1

[PTO at 14].

It is thus apparent that CAC objects to virtually all of plaintiff's exhibits in this case, with the last objection being a blanket objection to plaintiff's exhibit 11 to 66. This court will wait until trial to ascertain whether these blanket objections were made in good faith or not, but it frankly cannot recall a case in which such a high percentage of a party's exhibits were deemed to be objectionable. Moreover, this court cannot overlook the fact that these tactics are being used by the same litigant - CAC - which has faced repeated prosecutions and administrative actions in three states based on the manner in which it conducts its towing business.

This court's concerns in this regard inform its view of a number of other objections listed in the pretrial order, such as both defendants' objections that:

> Defendant, Kroger Limited Partnership I objects to the following witnesses: Paul Burnett, Joseph Rowe, Odell Horton, Jr, and Colonel Mathew Lott. These witnesses were not disclosed during discovery by Plaintiff. Kroger further objects on the grounds of relevance and that the proffered evidence is more prejudicial than probative. **See Note above at 9c.14.**
> Defendant, CAC Operations, LLC., objects to the following witnesses: Paul Burnett, Joseph Rowe, Odell Horton, Jr, and Colonel Mathew Lott. These witnesses were not disclosed during discovery by Plaintiff. CAC further objects on the grounds of relevance and that the proffered evidence is more prejudicial than probative. **See Note above at 9c.14.**

[PTO at 16].

In this court's experience, efforts to strike witnesses for not being disclosed in discovery are something which is typically addressed in a pre-trial motion, for the Magistrate Judge's consideration. Magistrate Judges have much greater knowledge of the discovery rules than this court does, and they have actually worked with the parties in discovery and know who has been conducting it in good faith and who has not. Moreover, this court's attention at any trial – and that of its staff – must be simultaneously directed at a large number of issues, including following the testimony of witnesses, preparing jury instructions, and dealing with juror issues,

just to name a few. That being the case, having to rule on the admissibility of a witness based upon issues relating to a discovery process which this court did not supervise is calculated to lead to an incorrect result. That is why these issues are normally handled in pretrial motions and not at trial. Thankfully, Judge Virden has agreed to address these issues in a hearing set for this afternoon, and this court appreciates her doing so.

This court has similar concerns regarding defendants' attempts to have this court rule at trial upon the admissibility of the exhibits which they failed to attach to their motions *in limine*. This court discussed these issues in its ruling upon those motions, as well as in denying Kroger's motion to reconsider that ruling. [Docket entries at 230, 246]. Needless to say, if one wishes to file a motion *in limine* to strike certain exhibits, then this court needs to actually *view* the exhibits in order to decide whether they are admissible or even to know what kind of evidence we are talking about here. As discussed previously, Kroger contends that it did not attach the exhibits to its motion because it was having delays in Bates stamping and labeling those documents. As this court noted in its ruling denying reconsideration, however:

> Kroger thus notes that it submitted its motion *in limine* on September 16, 2025, and this court did not rule upon that motion until October 21, 2025. Thus, Kroger had over a month's period of time in which it was aware that it had submitted an incomplete motion *in limine* to this court, and it could have, at any point during that time, notified this court of the difficulties involved in Bates stamping the documents in question and requested an extension of time to submit a complete motion *in limine.*

[Docket entry 246 at 2].

It would have taken Kroger very little time to notify this court of the difficulties it was having in relation to the documents, but it chose to keep this information to itself and to have this court rule upon an incomplete motion. In light of Kroger's failure in this regard, the question in the court's mind is to what extent, if any, it is entitled to a "do over" at trial and to have this court address the issues which Kroger itself recognized should have been raised in a pretrial motion *in*

*limine*. This court's inclination is to conclude that Kroger is not entitled to a completely clean slate in this regard, otherwise there would be no consequences for failing to follow the rules in this regard.

Still, it may be that this court will have to spend a considerable amount of time at trial in ruling upon issues relating to CAC's history of prosecutions and adverse administrative actions relating to its business practices. However, this court believes that the issues in this context should be pared down considerably by its admonition that plaintiff will not be permitted to belabor the point on this issue. In light of this ruling, this court directs that plaintiff choose only his most relevant and clearly admissible evidence in support of his claims, since he will not be permitted to introduce every exhibit he seeks to present to the jury. This will, presumably, obviate the need to rule upon most of defendants' objections to plaintiff's exhibits. This court would emphasize, however, that in determining admissibility of evidence of CAC's business practices, this court must consider their relevance both for plaintiff's claims against CAC and also for his claims against Kroger. As to the latter claims, plaintiff alleges that Kroger failed to make due diligence inquiries regarding CAC's business practices, but any evidence which plaintiff might have regarding events that occurred *after* the incident in this case would obviously not be relevant as to Kroger. This is because, needless to say, any inquiries made by Kroger would not have revealed misconduct by CAC which had not yet occurred.

The timing issues relating to plaintiff's claims against CAC seem murkier, since one could argue that even evidence of bad acts occurring after the events in this case may be relevant for showing that CAC has made a business decision to engage in highly aggressive towing practices and that the events in this case were merely part of that. Although the parties have not

4

briefed this issue, this court's own research largely confirms the above impression, since the

Fifth Circuit has made it clear that *subsequent* bad acts may be relevant under Rule 404(b).

In a 1980 decision, for example, the Fifth Circuit wrote that:

> In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), we held that prior similar acts were admissible as against criminal defendants, when (1) relevant to an issue other than character; and (2) not unfairly prejudicial within the meaning of Fed.R.Evid. 403. *Beechum,* 582 F.2d at 911. See Fed.R.Evid. 404(b). That same analysis governs subsequent similar acts. *See United States v. Myers*, 550 F.2d 1036, 1044 n. 10 (5th Cir. 1977). Webb apparently concedes that the alleged subsequent shooting was relevant to proving criminal intent, i. e., it rendered less plausible any suggestion that the identical first incident was a hunting accident. *Cf. United States v. Dunbar*, 614 F.2d 39, 42 (5th Cir. 1980).

*United States v. Webb*, 625 F.2d 709, 710 (5th Cir. 1980). In so writing, the Fifth Circuit cited

*United States v. Myers*, which noted that:

> The fact that the uncharged crime occurred after rather than before the charged crime does not affect its admissibility. *United States v. Pollard*, 509 F.2d 601, 604 (5th Cir. 1975), cert. denied sub nom. United States v. Pollard, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975) and *United States v. Herman*, 423 U.S. 845, 96 S.Ct. 84, 46 L.Ed.2d 68 (1975); *United States v. Alston*, 460 F.2d 48, 55 (5th Cir. 1972), cert. denied, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972).

*Myers*, 550 F.2d at 1044 n. 10.

This court also finds instructive the Fifth Circuit's 2001 decision in *United States v.*

*Peterson,* where it wrote that:

> "The district court's decision to admit Rule 404(b) evidence is reviewed for abuse of discretion. This review is necessarily heightened in criminal cases." *Richards,* 204 F.3d at 199 (citations and internal quotation marks omitted). In making a Rule 404(b) determination, the trial court must "determine that the extrinsic offense evidence is relevant to an issue other than the defendant's character" and also "whether the evidence satisfies Rule 403." *Id.* (citing *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc)). Peterson challenges the evidence under both prongs of the *Beechum* test, arguing that future acts are not evidence of criminal intent in the past and that the evidence was unduly prejudicial. We disagree as to both arguments.

5

> The evidence was offered as evidence of Peterson's intent. Our prior decisions clearly allow for evidence of "bad acts" subsequent to the subject matter of the trial for the purpose of demonstrating intent. *See United States v. Catano,* 553 F.2d 497, 499–500 (5th Cir.1977); *Roe v. United States,* 316 F.2d 617, 623 (5th Cir.1963) ("Since this is a question of intent, acts done before and after the crime charged are admissible if the circumstances show a sufficient connection from which inferences may reasonably be drawn."). The evidence of Peterson's future conduct would not be admissible to prove his *conduct* at ALL. Once the jury concluded that Peterson committed the conduct at issue, however, they could consider evidence of similar subsequent conduct (relatively closely linked in time), and evidence of his intent on that subsequent occasion, to draw inferences about the *intent* underlying his conduct at ALL.

*Peterson*, 244 F.3d 385, 392–93 (5th Cir. 1982).

This court would call particular attention to the second paragraph above, where the Fifth Circuit wrote that:

> The evidence of Peterson's future conduct would not be admissible to prove his *conduct* at ALL.[1] Once the jury concluded that Peterson committed the conduct at issue, however, they could consider evidence of similar subsequent conduct (relatively closely linked in time), and evidence of his intent on that subsequent occasion, to draw inferences about the *intent* underlying his conduct at ALL.

*Id.* Given the Fifth Circuit's admonition in this regard, this court is inclined to instruct the jurors that they should not consider any extrinsic acts by CAC in determining what occurred in the altercation between plaintiff and defendant's driver in this case. As to that issue, the jurors will be told that they should decide based upon their evaluation of the credibility of the witnesses' testimony at trial.

Consistent with *Peterson*, however, his court is inclined to instruct the jurors that they may consider this extrinsic evidence in determining CAC's intent in this case, including whether it acted with malice in dealing with plaintiff, including by filing charges against him. Of course, "malice" is an essential element of the malicious prosecution claim against CAC which arguably

---

[1] This court notes that, in *Peterson*, "ALL" was the name of the company for which the defendant worked, rather than a capitalization/emphasis of the word "all." *Peterson*, 244 F.3d at 388.

forms the heart of this case.  As to Kroger, this court is inclined to instruct jurors that they should only consider evidence of *prior* extrinsic acts by CAC in determining whether, in the exercise of due diligence, it knew or should have known about its alleged bad acts in deciding to enter into an exclusive business relationship with it.

This court has previously stated why it believes that this extrinsic 404(b) evidence is essential for jurors to reach an informed verdict in this case.  In light of these findings (which this court will not repeat here), it concludes that the probative value of the evidence easily outweighs its prejudicial effect within the meaning of Rule 403.  This court notes that it enjoys particularly wide discretion in this regard in civil cases, since the Fifth Circuit has made it clear that "[t]he district court's decision to admit Rule 404(b) evidence is reviewed for abuse of discretion. This review is necessarily heightened in criminal cases." *Richards,* 204 F.3d at 199. No criminal defendant's freedom is at stake in this civil lawsuit, and this court believes that, with the caveats and jury instructions stated above, its decision to admit the evidence of extrinsic bad acts in this case to be fully supported by Fifth Circuit authority, discussed above.  Although this court reserves the right to further modify its views in this regard at trial, it is presently inclined to make evidentiary rulings and to issue jury instructions consistent with this order.

This, the 11th day of June, 2026.

  /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI